IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 1:20-cr-8 |
| v. | ) | |
| | ) | Before Hon. Stephanie L. Haines |
| CODY A. NEELY, | ) | |
| | ) | Electronically Filed |
| Defendant. | ) | |

<u>MEMORANDUM IN AID OF SENTENCING</u>

AND NOW comes Defendant, Cody Neely, by and through his attorney, Kelvin L. Morris, Esquire, and respectfully files the following Memorandum in Aid of Sentencing on the following basis:

Furthering the trend started by the United States Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court restored the tremendous discretion that sentencing courts possessed prior to the promulgation of the sentencing guidelines. <u>Gall v. United States</u>, 522 U.S. 38, 128 S.Ct.586 (2007). Largely as a result of the Supreme Court's pronouncements in <u>Gall</u> and <u>Kimbrough v. United States</u>, 522 U.S. 85, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have "significantly broadened." <u>United States v. Moon</u>, 513 F.3d 527, 544 (6th Cir. 2008), quoting <u>Gall</u>, 128 S.Ct. at 602. District courts are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines and, importantly, sentencing courts are not required to even presume that the guidelines provide an appropriate sentence in a given case.

The Supreme Court has explained that the "reasonableness" of a sentence is the controlling query and it further held that any sentence imposed on a defendant, whether below, above or within the sentencing guidelines, is to be reviewed "under a deferential abuse-of-discretion standard." Gall, 128 S.Ct. at 598.    As set forth in United States v. Russell, 564 F.3d 200, 203 (3rd Cir. 2009), appellate courts must first

> ensure that the district court committed no significant procedural error in arriving at its decision[.] United States v. Wise, 515 F.3d 207, 217 (3rd cir. 2008). Second, "[i]f we determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence[.]" Id. at 218. With respect to the first inquiry, a district court commits significant procedural error by, *inter alia*, failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence[.]  Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L. Ed. 2d 445 (2007), quoted in Wise, 515 F.3d at 217.

If there is no procedural error, an appellate court must "then, at stage two, consider its substantive reasonableness." United States v. Tomko, 562 F.3d 558, 567 (3rd cir. 2009) citing Levinson, 543 F.3d at 195.    Substantive review focuses not on one or two factors, but on the totality of the circumstances. Id. citing Gall, 128 S. Ct. at 597; United States v. Howe, 543 F.3d 128, 137 (3d Cir. 2008).    Citing Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 169 L.Ed.2d 203 (2007), the Gall Court explained that a sentencing court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range".   128 S.Ct. at 596. See also Kimbrough, supra.  The Third Circuit has recognized this structure.  United States v. Smalley, 517 F.3d 208, 211 (3rd Cir. 2008). In Gall, noting that the sentencing guidelines should only be the "starting point" and the "initial benchmark" of a sentencing proceeding, the Court noted that the Guidelines are not the only consideration.   Id.   Next, "after giving both

2

parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." 128 S.Ct. at 596. In doing so, however, a sentencing court is not permitted to presume that the Guidelines range is reasonable. 128 S.Ct. at 596-597. The sentencing judge "must make an individualized assessment based on the facts presented" at sentencing. 128 S.Ct. at 597. If the sentencing judge decides that a sentence outside the applicable Guideline range is justified, the sentencing judge "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. Id. Continuing on, the Gall Court explained that a sentencing court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. Id.; see Wise, 517 F.3d at 215-216 (reiterating Gall sentencing analysis). In United States v. Gunter, 462 F.3d 237, 246 (3rd Cir. 2006), the Third Circuit interpreted Booker to require a district court to comply with the following three steps:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker;
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account the Third Circuit's pre-Booker caselaw, which continues to have advisory force; and
>
> (3) Finally, district courts are required to exercise their discretion by considering the relevant §3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence.

See also Tomko, 562 F.3d at 567; United States v. Levinson, 543 F.3d 190, 194-195 (3rd Cir. 2008);

3

United States v. Charles, 467 F.3d 828, 830-31 (3rd Cir. 2006); United States v. Jackson, 467 F.3d 834, 837 (3rd Cir. 2006).

These three factors, while not identical, are consistent with the considerations enunciated in Gall and continue to guide sentencing courts within the Third Circuit. Smalley, 517 F.3d at 215; Wise, 517 F.3d at 216.

Notwithstanding the decreased rigidity of the sentencing guidelines, the first step in determining a federal defendant's sentence requires a sentencing court to consider the federal sentencing guidelines because, in fact, they are a product of Congressional action. United States v. Langford, 516 F.3d 205, 214 (3rd Cir. 2008) citing United States v. Goff, 501 F.3d 250, 257 (3rd Cir. 2007); Cooper, supra. A sentencing court's failure to correctly calculate the correct guideline range "thwarts" reasonableness review and taints the remaining sentencing analysis. United States v. Ali, 516 F.3d 205, 214 (3rd Cir. 2008). A sentencing court must correctly calculate the correct offense level, criminal history category, enhancements and sentencing range. Langford, 516 F.3d at 213.

After calculating the appropriate sentencing guidelines range, a sentencing court should also consider any motions for departure. Such a motion is distinct from a request for a "variance" from a sentencing guideline range. See United States v. Vampire Nation, 451 F.3d 189, 195 (3rd Cir. 2006)(A departure is based on the sentencing guidelines. A variance is based on consideration of the §3553(a) factors). See also Gunter, 462 F.3d at 247, n. 10. As set forth in United States vs. Fumo, 655 F.3d 288, 317 (3rd Cir. 2011):

There are "two types of sentences that diverge from the original Guidelines range . . . . A traditional sentencing 'departure' diverges . . . from the originally calculated range 'for reasons contemplated by the Guidelines themselves.' In contrast, a 'variance' diverges . . . from the Guidelines, including any departures, based on an exercise of the court's discretion under § 3553(a)." United States v. Floyd, 499 F.3d 308, 311 (3d Cir. 2007) (internal citations omitted). This distinction is more than mere formality. "Although a departure or a variance could, in the end, lead to the same outcome . . . it is important for sentencing courts to distinguish between the two, as departures are subject to different requirements than variances." Id. "[D]istrict courts should be careful to articulate whether a sentence is a departure or a variance from an advisory Guidelines range." United States v. Vampire Nation, 451 F.3d 189, 198 (3d Cir. 2006).

In Kimbrough, the Supreme Court explained that a sentencing court's decision to adopt

an offense level outside of the guidelines is permissible

when the sentencing judge finds a particular case 'outside the heartland' to which the Commission intends individual Guidelines to apply. Rita, 551 U.S. at 2461.

128 S.Ct. at 575.

The "heartland" to which the Kimbrough Court alluded, is specifically described in the Guidelines:

[t]he Commission intends the sentencing courts to treat each guideline as carving out a "heartland", a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. . . .

See United States Sentencing Guidelines, Chapter 1, Part A 4(b); United States v. Baird, 109 F.3d 856 (3rd Cir. 1997); see also United States v. Ali, 508 F.3d 136, 147-148 (3rd Cir. 2008)

5

In Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), a decision rendered long before Blakely, Booker, Gall and their progeny, the United States Supreme Court affirmed the Sentencing Commission's position with respect to the "heartland" policy announced in United States Sentencing Guidelines, Chapter 1, Part A 4(b).  Most importantly, the Court, in overruling the Ninth Circuit Court of Appeals, held that the decision of a District Court to depart from the sentencing guidelines should be overturned only where the sentencing court abuses its discretion.  Koon, 116 S.Ct. at 2043.   In fact, the decision of a sentencing court to depart from the sentencing guidelines shall be given "substantial deference, for it embodies the traditional exercise of discretion by a sentencing court".  Id. at 2046; see also United States v. Sally, 116 F.3d 76 (3rd Cir. 1997).  Such deference is proper because "District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do".  Koon, 116 S.Ct. at 2047.  As recognized by the Supreme Court, the Sentencing Commission's less than rigid approach exists because "it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision".  Id. at 2044; see also U.S.S.G. Chapter 1, Pt. A, intro. comment 4(b).

In formulating a sentence, the Third Circuit has recognized that departing from the sentencing guidelines is an important part of the sentencing process.  United States v. Sharapan, 13 F.3d 781 (3rd Cir. 1994); United States v. Gaskill, 991 F.2d 86 (3rd Cir. 1993); United States v. Lieberman, 971 F.2d 989 (3rd Cir. 1992).  The Third Circuit has explained that departures are important:

> because they offer the opportunity to ameliorate, at least in some respects, the rigidity of the Guidelines themselves.  District judges, therefore, need not shrink from utilizing departures when the

6

opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence.

United States v. Gaskill, 991 F.2d 86 (3rd Cir. 1993).

Moreover, even when circumstances or factors which are viewed in isolation do not warrant a departure, a sentencing court may still depart when the circumstances or factors, in combination, "prove to be so exceptional as to provide a basis for departure." United States v. Hancock, 95. F.Supp. 280, 288 (E.D.Pa. 2000) citing United States v. Evans, 49 F.3d 109, 114 (3rd Cir. 1995); See Comment to U.S.S.G. §5K2.0.   Finally, "[t]he decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis". Koon, 518 U.S. at 98.

As set forth above, the Third Circuit, in Gunter and its progeny, has advised that after calculating the appropriate advisory sentencing guideline range, district courts are required to exercise their discretion by considering the relevant §3553(a) factors in setting the sentence it imposes regardless of whether it varies from the sentence calculated under the Guidelines.  462 F.3d at 246.    Despite a sentencing court's mandate to correctly calculate the advisory guideline range, the directives of recent sentencing jurisprudence make clear that courts may no longer uncritically apply the guidelines.  In fact, as set forth above, a sentence within the advisory guidelines is not presumptively reasonable.   Such an approach would be contrary to the holdings Gall and the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the §3553(a) factors, many of which the guidelines either reject or ignore.

As explained by the Third Circuit Court of Appeals in <u>Grier</u>:

> [u]nder an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error. **The only change in the equation is that, at the end of the day, the district court is not bound by the recommended Guidelines range, but must impose a sentence based on all the factors articulated in §3553(a)**. The court of appeals must then decide whether that final sentence is 'reasonable' (emphasis supplied).

<u>Grier</u>, 475 F.3d at 561.

In evaluating a sentencing court's factual findings, the Supreme Court has noted that a sentencing judge's firsthand experience with a particular case places the sentencing judge in a better position to evaluate the facts relative to sentencing. In <u>Kimbrough</u>, the Supreme Court, citing <u>Rita</u>, acknowledged that a sentencing judge "has 'greater familiarity with . . . the individual case and the individual defendant than the [Sentencing] Commission or the appeals court. 128 S.Ct. at 574. "He [or she] is, therefore, in a superior position to find facts and judge their import under 3553(a) in each particular case." <u>Id</u>. citing <u>Gall</u>, 128 S.Ct. at 598.

Justice Scalia explains the role of the sentencing guidelines in the post-<u>Booker</u> era in his dissent from <u>Booker</u>'s remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise, if it thought the Guidelines not only had to be considered (as the amputated statute requires) but had generally to

be followed its opinion would surely say so.

Booker, 543 U.S. at 305-306 (Scalia, J., dissenting in part).    As set forth above, a sentencing

court is not permitted to presume that the Guidelines range is reasonable. Gall, 128 S.Ct. at 596-

597. In fact, a sentencing judge may "disregard" the Guidelines.  Rita, 127 S.Ct. at 2466.   This

notion now gives a sentencing court the discretion to disagree with and reject policy judgments

of the Sentencing Commission and the Guidelines.


Although the Gall decision did not expand on the nature of the required § 3553(a)

consideration, the Third Circuit has expressed what it deems necessary.   The Third Circuit

requires that the record "demonstrate the trial court gave "meaningful consideration" to the

§3553(a) factors." See United States v. Vargas, 477 F.3d 94, 101-102 (3rd Cir. 2006); United

States v. Manzella, 475 F.3d 152 (3rd Cir. 2007); United States v. Parker, 462 F.3d 273, 276 (3rd

Circuit 2006), citing Cooper, 437 F.3d at 329, n3. A district court need not "discuss and make

findings as to each of the § 3553(a) factors if the record makes clear the court took the factors

into account in sentencing", however, the record must reflect that the district court considered the

§ 3553(a) factors and that those factors were "reasonably applied to the circumstances of the

case." Id.    A trial court should not sway from imposing its independent judgment in such

considerations and great deference is given to the trial court "because it is in the best position to

tailor a sentence to a particular defendant and his offense." Vargas, 477 F.3d at 101 citing Cooper

at 329-332; see also Jackson, 467 F.3d at 841; United States v. Lloyd, 469 F.3d 319, 323 (3rd Cir.

2006); United States v. Dragon, 471 F.3d 501 (3rd Cir. 2006).

9

"Meaningful consideration" includes addressing the arguments of the parties which have legal merit and correctly calculating the appropriate guideline range. Cooper, 437 F.3d at 329. A sentencing court "need not discuss every argument made by a litigant if an argument is clearly without merit." Cooper, 437 F.3d at 329.   "Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing. Cooper, 437 F.3d at 329.  A sentencing court must, however, address a defendant's colorable arguments concerning specific facts germane to this third step analysis.   United States v. Sevilla, 541 F.3d 226, 232 (3rd Cir. 2008).

Additionally, "a rote statement of the §3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. The Third Circuit has explained that, in reviewing a district court's sentence, "we have to satisfy ourselves, before we can conclude that the judge did not abuse his [or her] discretion, that he [or she] exercised his [or her] discretion, that is, that he [or she] considered the factors relevant to that exercise." Cooper, 437 F.3d at 329.

Moreover, after consideration of the relevant factors, a sentencing court can vary (i.e., a "variance") from the advisory guidelines range.  Gunter, 462 F.3d at 247, n. 10.    In Gall, the Court's decision categorically rejected an "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guideline range". 128 S.Ct. at 595; see also Levinson, 543 F.3d at 196.   Rather than requiring extraordinary circumstances to justify a

10

deviation from the guidelines, the Court explained that a district judge must explain his or her reasons for a variance in a particular case with sufficient justifications.    Id.    As set forth in Levinson:

> While the Guidelines are no longer mandatory, United States v. Booker, 543 U.S. 220, 245 (2005), and no "extraordinary circumstances" are needed to justify a sentence that varies from the recommended results, Gall, 128 S.Ct. at 595, and while there is no mathematical formula for determining whether a district court's justifications for a variance are sufficient, id. at 594-95, we nonetheless must be satisfied that, broadly speaking, an adequate justification is provided on the record.

543 F.3d at 196.    As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, a reviewing court must affirm. United States v. Jones,   566 F.3d 353, 366 (3rd Cir. 2009) citing Wise, 515 F.3d at 218.  Where a district court decides to vary from the Guidelines' recommendations, an appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Tomko, 563 F.3d at 56, citing Gall, 128 S.Ct. at 597.


According to Gall, Booker and its related Third Circuit authority, in determining the minimally sufficient sentence, sentencing courts are required to consider the following 18 U.S.C. §3553(a) factors:

> 1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2) the need for the sentence imposed –
>     (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care,         or other correctional treatment in the most effective manner;

11

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for –

      (A) the applicable category of offense committed by the applicable category of defendant
          as set forth in the guidelines –
          (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title
             28, United States Code, subject to any amendments made to such guidelines
             by act of Congress (regardless of whether such amendments have yet to be
             incorporated by the Sentencing Commission into amendments issued under
             section 944(p) of title 28); and
          (ii) that, except as provided in section 3742(g), are in effect on the date the
             defendant is sentenced; or
      (B) in the case of a violation of probation or supervised release, the applicable guidelines
          or policy statements issued by the Sentencing Commission pursuant to section
          994(a)(3) of title 28, United States code, taking into account any amendments made
          to such guidelines or policy statements by act of Congress (regardless of whether
          such amendments have yet to be incorporated by the Sentencing Commission into
          amendments issued under section 994(p) of title 28);

5) any pertinent policy statement—
      (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28,
      United States Code, subject to any amendments made to such policy statement by act of
      Congress (regardless of whether such amendments have yet to be incorporated by the
      Sentencing commission into amendments issued  under diction 994(p) of title 28);
      and
      (B) that, except as provided in section 3742(g), is in effect on the date the defendant is
      sentenced.

6) the need to avoid unwarranted sentence disparities among defendants with similar records who
    have been found guilty of similar conduct; and

7) the need to provide restitution to any victims of the offense.


The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence

sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2",

as set forth above.    This directive, commonly called "sentencing parsimony" is defined as the

least restrictive sentence necessary to achieve the purposes of sentencing.   United States v.

Dragon, 471 F.3d 501, 503 (3rd Cir. 2006);  See also Kimbrough, 128 S.Ct. at 575-576 (a district

court's judgment that a particular defendant's sentence was sufficient but not greater than

necessary is entitled to great weight, even if the district court's judgment is based in part of its disagreement with the policies behind an applicable guideline).  Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is ***not*** an appropriate means of promoting correction and rehabilitation" (emphasis added); see also <u>United States v. Manzella</u>, 475 F.3d 152 (3rd Cir. 2007) (It is the policy of the United States Congress, clearly expressed in law, that defendants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation. Instead, that legitimate goal of sentencing is to be accomplished through other authorized forms of punishment).

"[S]entencing courts have historically been afforded wide latitude in considering a defendant's background at sentencing". <u>United States v. Berry</u>, 553 F.3d 273, 279 (3rd cir. 2009) citing <u>United States v. Paulino</u>, 996 F.2d 1541, 1547 (3rd Cir. 1993).  Under 18 U.S.C. §3661, "***no limitation*** shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).  As a practical matter, this statutory language trumps the now-advisory policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth and virtually any other facts that fits within the ambit of §3553(a).

13

## **Application of the Gall Analysis to the Facts of this Case**

Mr. Neely requests that this Court impose a sentence of eight (8) years imprisonment. There is no limitation on the information which this Court can consider in fashioning an appropriate sentence. See 18 U.S.C. §3661; 18 U.S.C. §§3553(a)(1).   Mr. Neely believes that there are facts and circumstances that exist in this case that, either as a departure from the sentencing guidelines or as a variance from the advisory guideline range in conjunction with §3553(a), should be considered by this Court and which would warrant the imposition of a sentence of eight (8) years imprisonment.

This Court is to first consider the sentencing guidelines as a starting point in fashioning an appropriate sentence.  Mr. Neely does not dispute that the advisory guideline range calculated pursuant to the advisory sentencing guidelines is 151-188 months' imprisonment.   However, as set forth more fully below, Mr. Neely believes that there are certain facts and circumstances about him and this case that warrant a variance from this sentence and justify a sentence far below the advisory guideline range.

Mr. Neely possesses certain traits and characteristics which this Court should consider in varying from the advisory guideline range.  Mr. Neely is thirty-three (33) years old and has a total criminal history score of zero.    Mr. Neely was never married and does not have any children.   He is very close with his mother and sister.  He attended Strong Vincent High School in Erie, Pennsylvania, but did not graduate as he stopped going in the 10th grade because of bullying.  Mr. Neely was diagnosed with a learning disability, ADHD.

14

Mr. Neely requests that the Court to vary from the advisory guideline range based on policy considerations.   The U.S.S.G. §2G2.2 enhancements applied in this case are unsupported by and they fail to properly reflect the purposes behind §3553(a).  As set forth in <u>Kimbrough vs. United States</u>, 522 U.S. 85, 128 S.Ct. 558, 570 (2007), sentencing courts are free to vary from the advisory guideline range based on policy considerations in a given case:

> The Government acknowledges that the Guidelines "are now advisory" and that, as a general matter, "courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."  Brief for United States 16; cf. <u>Rita v. United States</u>, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d, at 214 (2007) (a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

The <u>Kimbrough</u> Court further stated:

> While rendering the Sentencing Guidelines advisory, <u>United States v. Booker</u>, 543 U.S. 220, 245, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), we have nevertheless preserved a key role for the Sentencing Commission.  As explained in <u>Rita</u> and <u>Gall</u>, district courts must treat the Guidelines as the "starting point and the initial benchmark," <u>Gall v. United States, ante, at ____, 128 S. Ct. 586, 169 L. Ed. 2d, at 457</u>.  Congress established the Commission to formulate and constantly refine national sentencing standards.  See <u>Rita v. United States</u>, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203, 213 (2007).  Carrying out its charge, the Commission fills an important institutional role:  It has the capacity courts lack to "base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."  <u>United States v. Pruitt</u>, 502 F.3d 1154, 1171 (CA10 2007) (McConnell, J., concurring); see supra, at ____, 169 L. Ed. 2d, at 491.

Id. at 575.

In this case, as the Third Circuit has recognized, U.S.S.G. §2G2.2 was not developed pursuant to the Sentencing Commission's institutional role and not based on empirical data and national experience, but instead were developed largely pursuant to congressional directives to punish persons who view child pornography.  United States vs. Grober, 624 F.3d 592, 608 (3rd Cir. 2010).  This message is antagonistic to the overriding statutory mandate "that imprisonment is not an appropriate means of promoting correction and rehabilitation."   As a result, this Court may vary from the advisory guideline range based upon a policy disagreement with U.S.S.G. §2G2.2.

In Grober, the district court varied from an advisory guidelines range of 235-293 and imposed a sentence of 60 months imprisonment after the defendant was convicted after a jury trial.   The sentencing court explained that its variance was based on a policy disagreement with 2G2.2.  In affirming the sentence, the Third Circuit noted:

> [t]he District Court discussed several additional reasons why it believed § 2G2.2 to be flawed. First, it found that most of the enhancements are essentially inherent in the crime and, thus, apply in nearly every case. Special Agent Chase testified that, of the 180 investigations she had conducted, every one involved 600 or more images, the use of a computer, and a prepubescent minor, and eighty percent had at least one image depicting sado-masochistic conduct. When the enhancements are added to the base offense level of 22 — increased from 17 in 2004 — the Guidelines, in the Court's view, produced "an outrageously high sentence." *Id*. Second, the Court found that the enhancements promote sentencing disparities. It stated that in 2006, the median prison term for federal child pornography offenses was sixty-three months imprisonment, indicating that sentencing courts were imposing significant sentences, but not as high as recommended by § 2G2.2. The Court expressed concern that the government's charging

> discretion and plea negotiations unfairly affect defendants such as
> Grober who do not initially plead guilty, and compared Grober to
> another defendant it had sentenced to thirty months imprisonment
> for possession of child pornography after he pled guilty without
> delay and pursuant to a plea agreement. Because of intervening
> changes to the Guidelines and Grober's initial decision to go to
> trial, Grober's Guidelines range was over two hundred months
> higher than the earlier defendant's. Third, the Court described how,
> given the nature of child pornography, it can be very difficult for
> the defense to rebut the government's characterization of the
> egregiousness of a defendant's conduct or dispute the government's
> evaluation of the defendant's collection compared to the collections
> of others, both of which may bear on the applicability of § 2G2.2's
> enhancements.

Id. at 597-598.   In analyzing the sentencing court's reasoning, the Third Circuit explained:

> Nonetheless, the Sentencing Guidelines "deserve careful
> consideration in each case," and because "they have been produced
> at Congress's direction, they cannot be ignored." Goff, 501 F.3d at
> 257. Here, after extensive consideration of § 2G2.2 and the §
> 3553(a) factors, the District Court determined not to apply the
> Guidelines range recommended by § 2G2.2. This was not an abuse
> of its discretion. The Court set forth an explanation that we find to
> be sufficiently compelling, and well-grounded in the § 3553(a)
> factors, to justify its decision. It adequately explained why it found
> § 2G2.2 flawed and why it varied from the recommended
> sentencing range to the ultimate sentence it imposed, which, it
> bears repeating, the government does not challenge. We also
> conclude that with the wealth of resources that have become
> available since the sentencing in this case, the Court's decision now
> stands on even stronger ground. Finally, although the government
> does challenge the Court's broad conclusions about § 2G2.2, it
> does not and cannot argue that the Court did not adequately
> consider the § 3553(a) factors as applied to Grober, as surely the
> Court did.

Id. at 609.

Mr. Neely requests this Court to adopt the principled analysis of the Third Circuit. Additionally, Mr. Neely asks this Court to endorse the reasoning of late United States District Judge, the Honorable Gary L. Lancaster, during the sentencing in <u>United States of America vs. Antonio Pampena</u>, (No. 10-222).    In varying substantially below the advisory sentencing guideline range in that child pornography case, Judge Lancaster took issue with the applicability of the numerous enhancements contained in §2G2.2:

> I'm also to consider the Sentencing Guidelines and purpose of sentencing. The applicable guideline here, Section 2G2.2, recommends defendant serve 78 to 97 months in prison.

> The manner in which this Guideline developed in the current form has been repeatedly explained elsewhere and I incorporate those historical discussions here.

> This Guideline is largely the product of chronological records, some of which the Sentencing Commission proposed, rather than the Commission Study and expertise.

> Section 2G2.2 was not developed pursuant to the Sentencing Commission's institutional role, nor was it based on empirical data and national experience.    The United States Supreme Court has held that a sentencing judge need not defer to such a guideline.

> This guideline also requires significant enhancements for conduct present in virtually all cases.

> In this case, for instance, defendant received the following enhancements:

> In this case, for instance, defendant received the following enhancements:

> Two levels for possession of material involving children under the age of 12.  An enhancement that was applicable in 95 percent of the cases.

Section 2G2.2(3) in 2010, two level enhancement for use of a computer. An enhancement that was applicable in 96 percent of the cases in 2010.

Five levels for 600 or more images being involved. An enhancement that was applicable in approximately 67 percent of the cases in 2010.

We note that 96 percent of offenders sentenced under 2G2.2 received some level enhancement based on the number of images possessed.

Four levels sexual abuse or exploitation of a minor or toddler.

Aside from applying virtually in all cases, these enhancements suffer from an additional flaw. As the Sentencing Commission noted, use of computer enhancement fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users. Computer enhancement is also comparable to impermissible double counting because it effectively increases defendant's sentence for the kind of harm that had been fully accounted for by the base offense level or other enhancements.

Number of images enhancement is also questionable because offenders regularly obtain the necessary number of images with minimal effort of the vast number of images available. While the number of images defendant may possess might be relevant to the harm cause, the significant increase in the sentence under the Guidelines is greater than necessary to address that harm.

Also, the current Guideline provides no distinction between sentences for ordinary first-time offenders, who download child pornography, and sentences for the most dangerous offenders, who distribute child pornography for money.

The statistic or violent conduct enhancement applies regardless of whether it was defendant's intent to possess and view such materials. In this matter, culpability is contrary to the primary rationale for banning possession of child pornography.

19

A defendant who does not seek out the material that results in greater harm to the children should not be treated the same as the defendant who does.  In this case, there is no indication defendant potentially sought out such material.

These enhancements contribute to unreasonable sentences for characteristics that are all but inherent to the crime for which defendant is convicted.

This approach in the Guidelines is fundamentally inconsistent with Section 3553(a) and is ultimately different from other guidelines in a sentence recommended as 78 to 97 months. In this case for a first-time offender, it is unreasonably long and inconsistent with what Section 3553 requires.

Finally, I'm to avoid unwarranted sentencing disparities among defendants with similar records that have been found guilty of similar conduct.

The Sentencing Commission report on the Child Pornography Guidelines issued October 2009 notes Commission has identified a review of the pornography guidelines as policy priority.

Also notes that for the past several years, 2G2.2 has had a high and increasing rate of downward departure and below-guideline variances. Sentencing data bears this out.

In the year 2008, 35 percent of the sentences were non-government sponsored below-guideline sentences compared to 13 percent sentences for all other offenders.

In 2009, the sentence was even higher, 43 percent of 2G2.2 sentences for non-government sponsored below-level guideline sentences compared to approximately 16 percent of such sentences for other offenders.

In this case, the same enhancements have been applied to formulate Mr. Neely's advisory guideline range.    As originally noted by the sentencing court in <u>Grober</u>, images involving minors (+2), sadistic or masochistic conduct (+4), use of a computer (+2) and cases

involving over 600 images (+5) are inherently part of virtually every child pornography case. These §2G2.2 enhancements have not been based on empirical data and have simply resulted from congressional directive.    It is respectfully requested that the Court consider these policy factors and consider that absent these enhancements, Mr. Neely's Total Offense Level would be greatly reduced.    Therefore, Mr. Neely asks that the Court vary from the advisory guideline range contained in the Presentence Investigation Report and impose a sentence of imprisonment of eight (8) years.   Unlike the defendant in <u>Grober</u>, Mr. Neely has accepted responsibility for his actions and his advisory guideline range is below that facing the defendant in that case.


Mr. Neely also requests the Court to consider that, until his current legal troubles, his life was spent as a law-abiding citizen, with the exception of one DUI in 2012.  There is little chance that Mr. Neely will engage in unlawful conduct again.     He is 33 years old and he has a zero prior record score.   <u>See</u>, <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines</u>, at p.28 (2004), <u>www.ussc.gov/publicat/Recidivism General.pdf</u>. (stating that for those defendant in Criminal History Category I, the recidivism rate for defendants who are over 50 is 6.2%, whereas the recidivism rate for such defendants between the ages of 41 and 50 is 6.9%, and for those defendants who are between ages 21 and 40, it is between 12% and 22%).   In considering the need to protect the public from further crimes of Mr. Neely, this Court should consider the statistically low risk of recidivism presented by Mr. Neely's history and characteristics.  See, e.g., <u>United States v. Darway</u>, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first-offender status); <u>United States v. Hamilton</u>, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court  abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); <u>United States v. Holt</u>, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming

21

below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime); United States v. Urbina, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); United States v. Cabrera, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders"); United States v. Ward, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

Moreover, the circumstances of this case have caused Mr. Neely great humiliation and embarrassment among his family, friends and other peers. This informal form of punishment has been real and severe and this Court may vary from the advisory sentencing guidelines on this basis.

Protecting the public from further crimes of Mr. Neely, deterrence or providing Mr. Neely with needed educational or vocational training, medical care or other correctional treatment while legitimate considerations, are not issues which warrant a lengthy custodial sentence in this case. See 18 U.S.C. §§3553(a)(2)(B), (C) and (D). A common argument made by the government is that a substantial prison sentence is the only way to vindicate the government's interest and promote deterrence. The government's argument, however, fails to consider that credible studies reveal quite the opposite. While there is no doubt that the likelihood of being arrested and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry,

Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; *see also* Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm; Restorative Justice and While Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). In white collar cases, research has disclosed that there is no difference in the deterrent effect of a probationary sentence and that of imprisonment. *See* David Weisburd *et al.*, Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); *see also* Gabbay, *supra*, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al*. Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-1S (2011). In fact, "[t]here is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective "white collar" offenders." *See*, United States v. Adelson, 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006). Moreover, another study suggests that it is the criminal justice process, not a lengthy prison sentence, that sends the most convincing message:

> [Studies show] no significant difference in recidivism between white-collar offenders sentenced to prison and similar offenders who did not receive a prison sentence. This finding is consistent with the research on specific deterrence and conventional crime. Based on their review of the literature, these researchers stated, "[a]t least since the 1970's, criminologists have consistently shown that those who are sentenced to prison have, at best, about the

same rates of recidivism as non-imprisoned offenders, and in some cases, a much higher rate. They speculated that perhaps the criminal process itself–charge, trial, conviction, and sentencing–has the greatest impact on the offender, and the period of imprisonment adds little by way of deterrence. "Whatever specific deterrence is gained," they argue, "may be produced before the imprisonment sanction is imposed."

Elizabeth Szockyj, Imprisoning White Collar Criminals?, 23 S. Ill. U. L.J. 485, 495 (1999).

Substantial discretion is conferred upon a sentencing court to tailor a sentence to a specific defendant based on all of the Section 3553(a) factors as well as departure considerations in the sentencing guidelines. Additionally, according to 18 U.S.C. §3582, in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."

By statute, a court must consider the kinds of sentences available in this case. 18 U.S.C. §3553(a)(5).   Mr. Neely recognizes that this Court must impose a term of imprisonment in this case.   There is a mandatory term of 5 years' imprisonment applicable in this case and, pursuant to the plea agreement, the maximum sentence that could be imposed in this case is a term of imprisonment of 20 years.

For the reasons set forth above, it is respectfully requested that the Court sentence Mr. Neely to eight years incarceration with any conditions this Court deems appropriate.   Mr. Neely acknowledges that, on its face, such a sentence would be a substantial variance and/or departure

from the advisory guideline range.   However, it is respectfully submitted that his personal characteristics, the circumstances of this case, policy considerations, his lack of a prior record and his low likelihood of recidivism justify such a sentence.   All that is required is that a Court give meaningful consideration to the §3553(a) factors and that those factors were "reasonably applied to the circumstances of the case." Cooper, 437 F.3d at 329. It is respectfully submitted that eight years' imprisonment satisfies this inquiry.

Respectfully submitted,

Respectfully submitted,

    s/ Kelvin L. Morris              .
Kelvin L. Morris, Esquire
Pa. I.D. No. 321407
2885 Wildwood Road Extension
Allison Park, PA 15101
(412) 660-2021

Attorney for Defendant,
Cody A. Neely